UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HARPER,<br><br>                    Plaintiff,<br><br>      v.<br><br>JEFF BLAZO,<br><br>                Defendant. | Case No. 1:17-cv-01717-LJO-EPG (PC)<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL RESPONSES; AND**<br><br>**ORDER RE: PRODUCTION OF DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW**<br><br>**(ECF NO. 35)** |

Plaintiff Jason Harper ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's claims against defendant Blazo for failure to protect in violation of the Eighth Amendment and for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (ECF Nos. 14 & 17). These claims arise from Plaintiff's allegations that Defendant Blazo ordered inmates, including Plaintiff, to clean up a hazardous chemical spill without proper training or protective gear. Plaintiff was injured when a chemical splashed in his eyes. Plaintiff also alleges that Defendant Blazo delayed filling out the necessary paperwork for Plaintiff to receive medical attention, resulting in further injury.

This order concerns documents Defendant has withheld purportedly pursuant to the "official information privilege" and submitted for *in camera* review by the Court.

1

# I.    BACKGROUND REGARDING DISCOVERY AT ISSUE

In Plaintiff's Scheduling Conference Statement, Plaintiff listed a number of discovery requests, including "Any and all complaints relating to Defendant Jeff Blazo, from Inmates, Citizens, and Other Fellow Employees," "Any and all 602 Appeal's against California Prison Industry Authority and Employee (Defendant) Jeff Blazo for Misconduct, or Deprivation of the Rights of Others While on the Job," and "any and all memoranda, investigative files or other documents created in Response to Defendant Jeff Blazo to such complaints." (ECF No. 31, at pgs. 6-7).

The Court held an Initial Scheduling Conference ("Conference") on February 4, 2019. (ECF No. 32). Based on discussions during the Conference, the Court ordered the exchange of certain documents and set forth a procedure for claiming privilege for those and other documents requested later in discovery pursuant to the Official Information Privilege. Specifically, the Court ordered Defendant to provide Plaintiff with all documents identified in Defendant's initial disclosures and to respond to Plaintiff's requests for discovery set forth in his scheduling conference statement within forty-five days of the date of service of the order. (ECF No. 33, at p. 2). The Court also provided that, to the extent Defendant withholds a document under the official information privilege, Defendant shall submit it to the Court *in camera* along with an explanation of why Defendant believes the documents are privileged and/or propose redactions. (*Id.*). Thus, for documents withheld from initial disclosures under the official information privilege, Defendant should have submitted such documents to the Court for review no later than March 29, 2019.

Defendant did not submit any documents for *in camera* review on or before March 29, 2019.

On April 18, 2019, Plaintiff filed a motion to compel. (ECF No. 35). Plaintiff's motion moved to compel responses to Requests 1, 2, 4, 6, 7, 8, 9, 10, 11, 12, and 13. Plaintiff attached a privilege log from Defendant that referenced four categories of documents. According to that privilege log, Defendant withheld the Confidential Supplement to Appeal and supporting documentation regarding Log # CSPC-3-16-03146, Employee Counseling Records (CDC

1123) for Jeff Blazo, and documents regarding staff complaint for Log # CSPC-3-16-03356 on the basis of "Privacy, institutional security (See written responses)." (ECF No. 35, at p. 3). Defendant also withheld a document described as Memorandum and Information sheet from Defendant Blazo regarding case, including summarized details of incident, on the basis of "Privacy, institutional security, attorney-client, attorney work product (see written responses)." (ECF No. 35, at p. 4).

Defendant responded to Plaintiff's motion to compel on May 9, 2019. (ECF No. 41). Defendant claimed that Plaintiff failed to identify the specific documents he sought, and why those documents should be disclosed. Defendant argued that he is not a police officer, so Plaintiff's cites to law regarding police officers are not relevant. Defendant argued that Plaintiff is impermissibly seeking character evidence, which is not admissible. While past acts are admissible to prove a habit, Defendant argues that Plaintiff has not proven that Defendant had a habit of breaking the rules, and thus is not entitled to evidence supporting such a habit. Defendant also argued that he should be permitted to withhold the documents listed on his privilege log because they were deemed confidential by institution and "[i]t is critical that investigative protocols are not known to the inmate population. . . ." (*Id.* at 5).

The Court held a hearing on the motion to compel on June 14, 2019. (ECF No. 50). The parties' positions on these issues were discussed at length. Following the hearing, the Court directed the parties to conduct a settlement conference in this case. In the event that conference was unsuccessful, Defendant was ordered to provide a supplemental submission as follows:

> 2. If the case fails to settle at the settlement conference, within three weeks after the date of the settlement conference Defendant shall make a supplemental submission regarding the following:
>
>   a. The date that Defendant submitted documents to the Court for *in camera* review;
>
>   b. Whether Defendant or the California Department of Corrections and Rehabilitation have any responsive documents to Plaintiff's requests for production numbers 2, 3, 4, and 5 regarding documents related to any Cal/OSHA investigations. Counsel agreed Defendant[] would not limit the response to request

Number 2 based on whether any inspection was a "surprise." The Court notes the legal obligations to preserve Cal/OSHA investigation documents set forth in Cal. Code Regs, tit. 8, section 5189; and

c. Legal authority supporting Defendant's decision to withhold witness statements related to the incident, in light of <u>Woodford v. Ngo</u>, 548 U.S. 81, 95 (2006) ("proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.").

(ECF No. 51, at pgs. 1-2).

Defendant filed a supplemental submission on August 2, 2019. (ECF No. 60). Defendant claimed that documents were timely submitted for *in camera* review on April 29, 2019, because that date was thirty days after responsive documents were served on Plaintiff. Defendant also indicated that documents responsive to Plaintiff's requests for production numbers 2, 3, 4 and 5, related to any Cal/OSHA investigations, had been located and were in the process of being produced. The supplemental submission also set forth Defendant's legal justification for claiming that the official information privilege prevented disclosure of all investigation documents, including witness accounts of the events at issue.

## II. WAIVER OF OFFICIAL INFORMATION PRIVILEGE FOR FAILURE TO COMPLY WITH THE COURT'S ORDER

At the outset, this Court evaluates whether Defendant has waived any official information privilege over documents in the investigation files. Defendant submitted the documents for the Court's review on April 29, 2019. Defendant claims that this was timely pursuant to the Court's scheduling order in ECF No. 34 because it was thirty days after the date that his responses to Plaintiff's requests for production were due.

Defendant's response ignores the fact that Defendant withheld these documents from its initial disclosures on the purported basis of the official information privilege, and was ordered to provide those documents forty-five days after the Court's February 12, 2019 order.

Specifically, the Court ordered the parties to make initial disclosures in its order dated August 28, 2018. (ECF No. 21). At the Conference, the Court discussed the parties' initial disclosures to determine whether any documents had been withheld on the basis of the official information privilege. The Court's discussion with Defense counsel went as follows:

> Court: Are you planning to provide copies of documents that you identified in your initial disclosures?
>
> Defense counsel: Your honor, we do plan on providing those. The only issue will be some of these documents we may want to have the Court take a look at *in camera* and we may have some slight redactions on such as on the inmate sign in sheet. I have to make sure there are no other inmates and CDCR numbers on this that we have to deal with. But yeah, as far as what he's requested, those should all be pertinent, they should be relevant, and ***the only issue will be whether there's confidential safety and security information. If so, what we would request, is for those to go in camera for your honor to review for making a decision on those.***
>
> Court: When do you think is a time you could either provide documents that were identified in your initial disclosures to Mr. Harper, or, probably at the same time but it would be two different things, submit them for in camera review?
>
> Defense counsel: ***Your honor I would say within 30-45 days we could do both of those.*** I think that would be a window we could have those to the Court and either the remaining to Mr. Harper.
>
> Court: Ok. Let's do 45 days to be safe. And it will be from the date of the order that I will do after this. . . . No later than 45 days Defendant[] shall provide Plaintiff with copies of all documents identified in Defendant's initial disclosures. To the extent that Defendant believes any of those documents are protected under the official information privilege, they shall submit those documents to the Court for in camera review along with, and I'll say, any explanation of any proposals for redaction regarding the official information privilege. . . .

(ECF No. 32) (emphasis added).[1]

Following the Conference, the Court issued a confirming order, stating specifically how Defendant should have submitted documents withheld from his initial disclosures within 45

---

[1] The Court relied on the audio file of the hearing to prepare this unofficial transcription of this portion of the Conference. The audio file is available upon request. Additionally, the parties may order an official transcript of the proceeding, at cost. The parties may contact the Court for the procedures to obtain such recording or transcript.

days of the order:

> Defendant has forty-five days from the date of service of this order to provide Plaintiff with all documents identified in his initial disclosures. Defendant does not have to provide Plaintiff with documents already provided. To the extent Defendant withholds documents under the official information privilege, Defendant shall submit those documents for *in camera* review, along with an explanation of why Defendant believes the documents are privileged and/or propose redactions.

(ECF No. 33, at p. 2).

Defendant did not submit the documents for *in camera* review within 45 days of the date of service of the order. He thus violated the Court's order. Moreover, defense counsel clearly understood this deadline because it was selected based on input from defense counsel during the Conference.

The Court is troubled by Defendant's violation of its order, and misrepresentation that it submitted the documents in a timely fashion. The Court has discretion to hold that any claim to the official information privilege has been waived due to Defendant's failure to comply with the Court's rules. Given the short time between the deadline and the ultimate submission to the Court, the Court ultimately declines to decide the issue solely on the basis of the delay in submission.

## III.    DEFENDANT'S LEGAL OBJECTIONS TO PRODUCTION

The Court now turns to the merits of Defendant's claim that the entire investigation file, including all witness accounts of events, is subject to withholding under the official information privilege.

### A.  Official Information Privilege

The withheld documents consist of 64 pages. According to the privilege log, the contents of the materials include the following four categories of documents: (1) Confidential Supplement to Appeal and supporting documentation regarding Log # CSPC-3-16-03146; (2) Employee Counseling Records (CDC 1123) for Jeff Blazo; (3) Documents regarding staff complaint for Log # CSPC-3-16-03356; and (4) Memorandum and Information Sheet from Defendant Blazo regarding case, including summarized details of incident. Among these

documents are reports on the interviews with Plaintiff, Mr. Harper, and Defendant, Mr. Blazo,

regarding the underlying incident. They also include reports of an interview of a witness to the

incident. There is also correspondence with an appeals coordinator regarding the review that

was conducted. Also included are statements of rights and similar notices regarding the

interviews. There is an attachment check-off sheet with various procedures. There is a

confirmation of discussion regarding the incident with Defendant. There are also memoranda

regarding other incidents involving Defendant. There are also statements from Defendant and

other persons regarding unrelated incidents. There are various letters from the Prison Industry

Authority to Defendant.[2]

As described above, Defendant served a privilege log covering these materials. As for

the first three categories of documents including investigation documents and witness accounts

related to the incident at issue, the privilege claimed is "Privacy, institutional security."

Defendant also submitted a declaration of M. Kimbrell, Litigation Coordinator at

California State Prison, Corcoran. (ECF No. 41-1). Ms. Kimbrell describes the documents and

concludes that "investigative documents are deemed confidential to protect the privacy, safety

and security of CDCR staff and inmates," and "personnel records are deemed confidential to

protect the privacy, safety, and security of CDCR staff and inmates." (*Id.* at 233). She also

claims that all personnel files are protected from disclosure by the Peace Officer Bill of Rights.

(*Id.*). She claims that "[b]y maintaining the confidentiality of staff complaints and

investigations, staff witnesses are encouraged to make truthful statements," and that "[s]taff

witnesses might not be as forthright if they know that their words may be used against an

individual officer by a civil rights plaintiff." (*Id.* at 234). She also states that such appeals

could include confidential information such as an inmate's classification score, probation

reports, and other sensitive information, which "could result in the complaining inmate being

assaulted or killed by other inmates." (*Id.* at 234-35).

Defendant also submitted legal arguments in his supplemental submission (ECF No.

---

[2] This is not an exhaustive list of the contents of the materials.

60), which provided the following legal standards:

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir. 1990). The privilege "is broad enough to cover all the disparate kinds of data and communications that can be involved in these types of" civil rights cases against governmental actors. *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987). Government personnel files are among the types of official information to which the privilege may be applied. *See Sanchez*, 936 F.2d at 1033. Access to files may be denied when a party obtains access to the confidential nature of files, such as investigation files, that could reach beyond the legitimate inquiries necessary to litigation. *See id.* at 1034.

"In determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law." *Lewis v. United States*, 517 F.2d 236, 114 F.R. 37 (9th Cir. 1975) (citations omitted). "Federal courts should give some weight to privacy rights protected by state constitutions or state statutes." *Kelly v. City of San Jose*, 114 F.R.D. at 656. This Court should consider the state law privileges asserted, as well as the state constitution and state statute privacy rights, including California Evidence Code, § 1040, *et. seq.*, §1043 ("official information" privilege), Cal. Const. Art. I, § 1, unwarranted invasion of personal privacy, California Penal Code, §§ 832.7 and 832.8 (California Public Records Act), Civil Code, §§ 1798.24 and 1798.40, Gov. Code, § 6254, and Cal. Code Regs. tit. 15, §§ 3321, 3370, and 3450(d).

"To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *See Sanchez*, 936 F.2d at 1033–34. The party opposing disclosure must make a substantial threshold showing by submitting a declaration or affidavit from a responsible person "stat[ing] with specificity the rationale of the claimed privilege." *Kerr v. United States Dist. Ct. for the Northern Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). In this case, to make this substantial threshold showing, Defendant submitted the declaration of M. Kimbrell, with the specific rationales of the claimed privileges detailed in paragraphs 5 and 6. [*See* Declaration of William McCaslin, Exhibit "C".]

In order for the Court to determine whether the official information privilege applies, a defendant must provide with the objection a declaration or affidavit containing (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality, (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to the plaintiff, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

8

*Kelly v. City of San Jose*, 114 F.R.D. at 670. Defendant complied with these five criteria by submitting the declaration of M. Kimbrell. [*See* Declaration of William McCaslin, Exhibit "C".]

(ECF No. 60, at pgs. 3-4). Defendant's submission went on to describe that the documents are considered confidential by the California Department of Corrections and Rehabilitation (CDCR). Defendant concluded "Defendant is not at liberty to balance the interests of production versus the interests of safety and security, as the Court will have to do, but rather Defendant must protect these documents pursuant to Title 15 until ordered to produce the documents." (ECF No. 60, at p. 5).

After review of the relevant law and Defendant's position, the Court finds that Defendant's claim of privilege over these documents does not comply with the law.

As Defendant himself cites, the federal common law official information privilege is a qualified privilege that balances the interests of the litigant in the case versus the disadvantages to the government. *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991) ("Government personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery.") (internal citations omitted); *Kerr v. United States Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976) (the "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure. . . ." ).

Notwithstanding this law, Defendant concedes that he did not even attempt to balance these interests before withholding the documents as privileged. Defendant states this explicitly, conceding "Defendant is not at liberty to balance the interests of production versus the interests of safety and security. . . ." (ECF No. 60, at p. 5). Moreover, nowhere in Defendant's briefing or argument does he provide any balancing of interests or even claim that safety and security concerns outweigh the importance of the documents to this case. Nor does the Kimbrell

declaration supporting assertion of the privilege contain any analysis of the importance of the documents to the litigation. (ECF No. 41-1, at pgs. 232-235). In other words, Defendant withheld as "privileged" documents based solely on its assertion that Defendant had *some* interest in keeping the documents confidential, without any regard to the importance of those documents in the litigation.

Defendant's position is particularly problematic when it comes to witness statements and evidence gathered as part of its investigation into Plaintiff's grievance about the incident. In upholding the Prison Litigation Reform Act (PLRA)'s exhaustion requirement, the United States Supreme Court held that "proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Woodford v. Ngo,* 548 U.S. 81, 94–95 (2006). This passage both shows an expectation that such evidence will be provided in the normal course of litigation, and that such evidence, especially accounts from witnesses, greatly contribute to the quality of the litigation. Withholding such critical documents from discovery, contrary to Supreme Court guidance, requires more than a general assertion of some interest on the part of Defendant. *See Caruso v. Solorio,* 2018 WL 2254365, at *2 (E.D. Cal. 2018) ("There was nothing legally erroneous about citing *Woodford*'s endorsement of using evidence gathered as part of the inmate grievance process in later litigation. . . . That endorsement is relevant to the balancing test in that it shows the relevance and beneficial use of evidence gathered in a prison's investigation, which should be balanced against the prison's security interests in evaluating the official information privilege. In short, it is appropriate to note that the Supreme Court has referred to the usefulness of witness statements that were generated from an investigation of a grievance.").

Defendant's assertion of privilege also did not comply with the legal standards in that it failed to evaluate the documents actually at issue in this case. Instead, Defendant justified withholding these documents based on what information might be contained in an investigation

file, regardless of whether that type of information was present in the documents withheld in this case.  For example, the Kimbrell declaration in support of the official information privilege explains:

> [B]oth regular appeals and appeals classified as staff complaints often disclose confidential information, for example information about an inmate's classification score and medical and/or psychological conditions.  And the attachments to the appeals could also be highly confidential, e.g., probation reports, details about the inmate's crimes.  Disclosing this information not only violates their right to privacy and possibly violates the law where medical information is concerned, but may create a safety and security concern of highly sensitive information were leaked to other inmates.  Such sensitive information can include an inmate appealing his "R" suffix that he has because he committed a sexually related offense.  Disclosure of this information could result in the complaining inmate being assaulted or killed by other inmates who learn of his "R" suffix.  The inmate's 602 complaint could disclose how much money is in the complaining inmate's trust account, which could endanger the inmate by subjecting him to possible extortion.  The complaint could also disclose an inmate's HIV status or psychological problems, which violates his right to privacy.  Moreover, I am aware of incidents where inmates have inadvertently received confidential information that led to an assault against an inmate for, e.g., snitching.
>
> Documents that indicate the current or recent prior location of inmates are not disclosed to other inmates and are considered confidential.  Doing so can create safety and security concerns.  For example, an inmate may learn of the location of rival gang members and use that information to plan violence.  Moreover, such disclosure could implicate privacy concerns of the inmate if they are housed, for example, in a building containing mostly mental health inmates.  Some facilities, and housing units within facilities, are set up to accommodate certain groups of inmates, such as transgender inmates, drop out gang members, and high notoriety inmates, who are higher risk of assault by other inmates.  Therefore, where an inmate is housed or has a history of being housed can create safety concerns.

(ECF No. 41-1, at pgs. 234-35).

The concerns Ms. Kimbrell identifies are certainly important and relevant to the balancing test involved in assertion of the official information privilege.  The problem is that these concerns she lists have nothing to do with the documents being withheld in this case. Based on the Court's review, none of the problematic information listed by Ms. Kimbrell is present in the documents being withheld by Defendant in this case.  The grievance at issue here concerned safety procedures at a laundry facility.  None of the documents being withheld

11

concern a sensitive inmate classification, private medical history, mental health accommodations, gang affiliations, or any of the problematic information described by Ms. Kimbrell.  It is legally improper to withhold documents as supposedly privileged based on security concerns that *could* arise in the course of an investigation when the declarant knows with certainty that such issues *are not present* in the documents at issue here.  *See Johnson v. Sandy,* 2014 WL 4631642, at *11 (E.D. Cal., 2014) ("To the extent defendants rely on Mr. Cervantes as the official invoking the official information privilege, his claims of the privilege are insufficiently specific.  His statement of the basis for the claim of privilege for internal investigative reports, inmates' appeals and staff complaints and documents revealing inmate locations are generalized in that there is no indication that he actually reviewed the specific documents sought by plaintiffs.").

Ms. Kimbrell's other justifications about the need to withhold investigation documents fall flat.  Ms. Kimbrell claims that witnesses would be less truthful if they believed their statements would be used in litigation.  (ECF No. 41-1, at p. 234 ("By maintaining the confidentiality of staff complaints and investigations, staff witnesses are encouraged to make truthful statements.")).  First of all, the documents show that the witnesses were not in fact told that their responses would be kept confidential.  As part of the documents submitted to the Court for *in camera* review, Defendant submitted the "Advisement of Rights—Appeal Inquiry" that it presented to Defendant.  HARP CONF 0028.  The only promise of confidentiality given in that advisement of rights was that statements made by the witness subject to the complaint could not be used "against you in any *criminal* proceedings."  *Id.* (emphasis added).  But it says nothing about keeping the documents confidential in civil litigation.  Once again, Defendant is asserting a justification that is not supported by the documents and circumstances in this case.

Moreover, there is no basis to the assertion that witnesses would be inclined to lie if they knew their statements would be used in a court of law.  Neither Ms. Kimbrell nor Defendant points to any support for such a statement, and cases have rejected such an assumption.  *See Kelly v. City of San Jose,* 114 F.R.D. 653, 664–65 (N.D. Cal. 1987) ("Since no empirical study supports the contention that the possibility of disclosure would make

officers who participate (as respondents or as investigators) in internal affairs investigations less honest it is doubly important to examine the assumptions that underlie that contention. . . . A police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where some disclosure was possible. . . . Thus there is a real possibility that officers working in closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report.") (footnote omitted).

Ms. Kimbrell's justification also goes too far and would justify every institution withholding every account by a witness, directly contrary to *Woodford* and the case law regarding the official information privilege. Put another way, no case holds that an institution can withhold as privileged all statements by witnesses about the event based on some speculation that they will lie if they knew their statements could be used in litigation.

Ms. Kimbrell also claims that "disclosure of these documents could educate inmates about CDCR's investigatory techniques and would therefore hamper future investigations." (ECF No. 41-1, at p. 234). Ms. Kimbrell does not explain how an inmate could threaten security if he or she understood the process of an investigation. Additionally, the institution's investigation proceeds according to publicly available process set forth in the California Code of Regulations, which are cited repeatedly within the documents. *See e.g.*, Cal. Code Regs., tit. 15, § 3084.7 ("(e) At least one face-to-face interview shall be conducted with the appellant at the first level of review, or the second level if the first level of review is bypassed. . . ."). To the extent Ms. Kimbrell is suggesting that the documents *could* disclose something that would jeopardize the safety of the institution, such the locations of video cameras or methods of surveillance, the Court has not seen any such information in these documents.

In conclusion, the Court finds that Defendant has not provided a legally sufficient basis for withholding these documents in discovery as privileged. Defendant has not even attempted to balance the interests involved, as required by the law. It has not identified any safety or security concern posed by the documents at issue in this case. And it has ignored Supreme

Court direction that such documents should be produced.[3]

**B. Confidentiality**

Defendant, with the support of Ms. Kimbrell's declaration, also asserts various arguments based on the assertion that the institution considers these documents to be confidential. (ECF No. 60, at pgs. 4-5 ("California Department of Corrections and Rehabilitation (CDCR) considers documents generated in the course of investigating staff complaints to be confidential. . . . Based on this designation of the Appeal/Allegation Inquiry as confidential, Defendant considered this category of documents to be confidential and treated the documents as such by submitting the official information privilege declaration, identifying them in a privilege log, and then providing them to the Court for *in camera* review.")).

As an initial matter, confidentiality is not the same as privilege, and is dealt with very differently under the Federal Rules of Civil Procedure. Whereas privileged documents fall outside the scope of discovery, confidential documents do not. Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to a party's claim or defense. . . .") (emphasis added). Whereas a party may withhold a privileged document merely by producing a privilege log, *see* Fed. R. Civ. P. Rule 26(b)(5), a party seeking to withhold a confidential document must make a motion for a protective order, *see* Fed. R. Civ. P. Rule 26(c)(1) ("A party or person from whom discovery is sought may move for a protective order

---

[3] Given Defendant's position, it is worth reminding Defendant that improper assertions of privilege are subject to sanctions. *Heath v. F/V ZOLOTOI,* 221 F.R.D. 545, 552 (W.D. Wash. 2004) ("The Court finds that sanctions are appropriate. . . . The Young firm could not have believed in good faith that its asserted privileges were valid."); *Flanagan v. Benicia Unified School Dist.,* 2008 WL 2073952, at *5, (E.D. Cal. 2008) *report and recommendation adopted* 2008 WL 4353077 (E.D. Cal. 2008), *aff'd* 404 Fed.Appx. 187 (9th Cir. 2010) ("Under federal law, improper assertions of privilege in the privilege log, failure to timely create a privilege log required under Fed.R.Civ.P. 26(b)(5), or the failure to identify with specificity the information withheld on account of assertion of a privilege, may constitute a waiver of the privilege."). The Court will not issue sanctions here because the documents were provided to the Court for *in camera* review with a full disclosure of the basis for the withholding. But the Court notes that the situation would be different if Defendant had withheld these documents from discovery as purportedly privileged without submitting the documents to the Court.

in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including . . . forbidding the disclosure or discovery . . . [and] limiting the scope of disclosure of discovery to certain matters. . . .").  Thus, Defendant may not legally withhold documents from discovery on the basis of confidentiality.  Instead, he must move the Court for a protective order.[4]

Setting aside the difference in procedure, the CDCR's designation of documents as confidential does not provide a basis to withhold them from discovery.  As a matter of law, CDCR's designation is not controlling on this Court.  As explained by the *Kelly* case, cited in Defendant's supplemental submission:

> [I]t is important to emphasize that in a civil rights case brought under federal statutes questions of privilege are resolved by federal law.  State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases.  It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities.  If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose* 114 F.R.D. 653, 655–56 (N.D. Cal. 1987) (citations omitted).  Moreover, privacy interests are narrowly construed for public officers, and those interests are balanced against the benefits of disclosure.  As described in the case of *Ramirez v. County of Los Angeles*, 231 F.R.D. 407 (C.D. Cal. 2005):

> Although the court may, of course, take into account legitimate privacy interests that might be implicated in the disclosure of documents and information, privacy concerns are not absolute; they must be weighed against other competing interests.  *Kelly,* 114 F.R.D. at 656, 660-61.  In the present case, any legitimate

---

[4] Given the Court's order in this case to provide such documents to the court for *in camera* review, the procedural difference is not material here.  But in standard cases, especially with *pro se* plaintiffs, the difference can be enormous.

15

privacy concerns are outweighed by the interests favoring disclosure. Judge Weinstein summarized the issue of privacy with respect to police officers who are defendants in civil rights suits:

Most information requested by civil rights plaintiffs in these lawsuits deals with professional personnel records, such as prior involvement in disciplinary proceedings or citizen complaints filed against the officers. The privacy interest in this kind of professional record is not substantial, because it is not the kind of "highly personal" information warranting constitutional safeguard. The privacy interest in nondisclosure of professional records should be especially limited in view of the role played by the police officer as a public servant who must be accountable to public review.

Some requests might touch on intuitively more private domains, such as an officer's psychiatric history, but even disclosures having "some effect on individual liberty or privacy" because of their personal nature are permissible when disclosure serves important public concerns.

*King v. Conde,* 121 F.R.D. 180, 191 (E.D.N.Y.1988) (citations omitted); *see also Welsh v. City of San Francisco,* 887 F.Supp. 1293, 1299 (N.D.Cal.1995) ("California statutes governing the release of police personnel files ... do not create privacy interests on the part of individual witnesses or officers because they were not enacted to protect such interests"); *Garrett v. City of San Francisco,* 818 F.2d 1515, 1519 n. 6 (9th Cir. 1987) (personnel files are discoverable in federal questions cases despite claims of privilege); *Ceramic Corp. of America v. Inka Mar. Corp.,* 163 F.R.D. 584, 589 (C.D.Cal.1995) ("In recent years, the courts have routinely ordered the production of personnel files of third parties in employment discrimination and police brutality cases.").

*Ramirez,* 231 F.R.D. 407 at 411–12 (alteration in original). *See also Edwards v. County of Los Angeles,* 2009 WL 4707996, at *3 (C.D. Cal. 2009) ("[T]he right to privacy is not absolute. In determining whether privacy is subject to invasion, the court must balance Defendants' asserted right to privacy against the relevance and necessity of the information sought by Plaintiff. Where a seeking party's need is great, the right to privacy can be overcome.") (citations omitted).

The documents at issue here do not concern any sensitive information, such as medical or personal information, that infringe on any witnesses' privacy interests. Instead, Defendant relies on various regulations to argue that the entire investigation is considered confidential. First, Defendant relies on CCR Title 15, § 3084.9(i)(3)(B)(1), supposedly for the proposition that the documents here have been designated confidential and cannot be shown to an inmate.

As an initial matter, it is not clear that this section applies here because Plaintiff made a health and safety complaint under the California Prison Industry Authority, which is covered by a separate section, which does not contain any confidentiality provisions. *See* Cal. Code Regs., tit. 15, § 3084.9(e) ("California Prison Industry Authority (CALPIA) health and safety complaints. . . . Pursuant to Labor Code and Industrial Relations regulations, an inmate who believes a health or safety hazard exists in a CALPIA operation shall deposit a written complaint in a readily accessible complaint box or give the complaint to any CALPIA staff member who shall submit it to the CALPIA health and safety committee for review and response. The committee shall undertake all authorized levels of review and referral."). Indeed, as described above, Defendant himself stated in opposition to the motion to compel that "Defendant Blazo is not a custody officer, but a civilian supervisor at California Prison Industry Authority (CALPIA)." (ECF No. 41, at p. 3). Additionally, even to the extent CCR Title 15, § 3084.9(i)(3)(B)(1) does apply, this section only applies to the "confidential report," and not the underlying witness statements or evidence. Cal. Code Regs., tit. 15, § 3084.9(i)(3)(B)(1) ("A confidential report shall summarize the review and include a determination of the findings concerning the allegation. This document shall not be provided to the appellant").[5]

Defendant also relies on CCR Title 15 § 3321, which states:

(a) The following types of information shall be classified as confidential:

(1) Information which, if known to the inmate, would endanger the safety of any person.

(2) Information which would jeopardize the security of the institution.

---

[5] The provision at issue also provides an exception for litigation as follows: "This document is strictly confidential to all inmates and any staff *except those involved in* the inquiry process or *litigation* involving the department." Cal. Code Regs., tit. 15, § 3084.9(i)(3)(B)(1) (emphasis added). The Court finds such language ambiguous as to whether the exception applies to inmates involved in litigation or just staff. Without further briefing and consideration, the Court declines to interpret the provision in connection with the pending motion.

Cal. Code Regs., tit. 15, § 3321(a)(1)-(2). Notably, these provisions do not provide wholesale confidentiality for all investigations, including witness statements or accounts. Instead, they state that documents are confidential when they would endanger the safety of a person or jeopardize the security of the institution. As described above, Defendant has not shown (and the Court has not seen from its review of the documents) that disclosure of these specific documents would endanger the safety of any person or the security of the institution. Without an underlying document by document review finding that a given document would endanger the safety of any person or jeopardize the security of the institution, these provisions do not apply to the documents.

Next, Defendant relies on CCR Title 15, § 3450(d) for the proposition that "Plaintiff cannot possess the confidential documents at issue." (ECF No. 60, at p. 6). But that provision states "No inmate or parolee shall prepare, handle, or destroy any portion of a departmental record containing confidential information *as that term is defined in Section 3321*." Cal. Code Regs., tit. 15, § 3450(d) (emphasis added). Section 3321 is the section cited above, which states that documents that would endanger the safety of a person or jeopardize the security of the institution shall be deemed confidential. Again, Defendant has not shown that these documents fit under that description. In other words, these provisions do not state that investigation files all endanger safety and security or should be treated as confidential. Instead, they state that *if* documents contain information that endangers the safety of a person or jeopardizes the security of the institution, those documents should be kept from inmates.

Ms. Kimbrell also argues that the personnel files are deemed confidential by California Penal Code section 832.7 and 832.8 and protected from disclosure by the Peace Officer Bill of Rights (POBAR). (ECF No. 41-1, at p. 233). "The asserted 'police officer personnel file' privilege, however, is not absolute. Further, to the extent the protections of Cal. Pen.Code § 832.7 and 'Public Safety Officers Procedural Bill of Rights Act,"'Cal. Gov't Code §§ 3301– 3310, apply in this case, they do not, per se, prohibit disclosure of such records. Moreover, the procedures regarding disclosure of police officer personnel files (i.e., Cal. Pen.Code § 832.7; Cal. Evid.Code §§ 1034, et seq .), do not supplant federal rules of procedure." *Pierce v. County*

*of Sierra*, 2013 WL 2421710, at *3 (E.D. Cal. 2013).  Moreover, those provisions do not apply here because Defendant is not a peace officer.  Defendant himself argued in opposing the motion to compel, "Defendant Blazo is not a custody officer, but a civilian supervisor at California Prison Industry Authority."  (ECF No. 41, p. 3).  "For this reason, any authority regarding police personnel files is inapposite and should be disregarded."  (ECF No. 41, at p. 3).  Additionally, the Court notes that some of the withheld documents state "THIS DOCUMENT IS NOT TO BE PLACED IN EMPLOYEE'S PERSONNEL FILE."  Thus, it is not clear which, if any, of the documents at issue would fall under this rule, to the extent it applies to the federal lawsuit based on a federal claim.

### C.  Character Evidence

Defendant also contends that the documents are not relevant under Federal Rule of Evidence 404, which provides in relevant part:

> **(a) Character Evidence.**
>
> > **(1) Prohibited Uses**.  Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>
> . . .
>
> **(b) Crimes, Wrongs, or Other Acts.**
>
> > **(1) Prohibited Uses**.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > **(2) Permitted Uses; Notice in a Criminal Case**.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(a) & (b).  Also relevant, Federal Rule of Evidence Rule 406 states that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."  Fed. R. Evid. 406

Defendant claims that prior acts should be excluded under this rule, and that Plaintiff has failed to establish there is sufficient evidence to establish that Defendant Blazo's conduct was the result of a habit.

The Court agrees that these rules govern the admissibility of prior acts, and will consider them in assessing the relevance of the documents, as described below. It is worth noting that the heart of this lawsuit is whether Plaintiff's injury at the laundry facility was an accident, or was a result of knowing disregard of safety procedures.

IV.    **ANALYSIS OF UNDERLYING DOCUMENTS**

Applying the legal standards discussed above, the Court makes the following findings regarding the underlying documents.

Defendant shall produce the following documents, which contain accounts of interviews of Plaintiff, Defendant, an eye witness to the incidents at issue, certain findings, and responses from Defendant. These documents are highly relevant to the issues in this case and do not contain any personally sensitive or security threatening information:

HARP CONF 0001-2

HARP CONF 0006-7

HARP CONF 0030

Defendant shall produce the following documents, which contain accounts of interviews and evidence related to separate issues regarding the laundry facility and Defendant acting in a supervisory capacity. The Court finds the information is sufficiently relevant for discovery. The Court is not making a determination of the admissibility of the documents at trial:

HARP CONF 0021-22

HARP CONF 0032

HARP CONF 0039

HARP CONF 0040

HARP CONF 0041

HARP CONF 0042

HARP CONF 0043

HARP CONF 0044

HARP CONF 0046-47

HARP CONF 0050-51

HARP CONF 0056-57

The remainder of the documents do not need to be produced. The Court finds that internal tracking of the investigation, and internal comments regarding the investigation process, are not relevant to the lawsuit. Moreover, the institution has some legitimate interest in withholding internal evaluations regarding the investigation process itself. The Court also finds that unrelated incidents not involving safety in the laundry facility are not sufficiently relevant to warrant discovery. Finally, the document Defendant wrote to the legal unit for evaluation is protected by the attorney-client privilege.

## V. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Within 14 days of the date of service of this order, Defendant shall produce to Plaintiff the following documents:

HARP CONF 0001-2

HARP CONF 0006-7

HARP CONF 0030

HARP CONF 0021-22

HARP CONF 0032

HARP CONF 0039

HARP CONF 0040

HARP CONF 0041

HARP CONF 0042

HARP CONF 0043

HARP CONF 0044

HARP CONF 0046-47

HARP CONF 0050-51

HARP CONF 0056-57[6]

2. The remainder of the documents submitted for *in camera* review need not be produced.

IT IS SO ORDERED.

Dated:  __August 16, 2019__          /s/ *Erica P. Grosjean*
                                   UNITED STATES MAGISTRATE JUDGE

---

[6] Although the Court did not see any such information, in the abundance of caution, Defendant may redact any social security numbers, addresses, and inmate classification scores contained in these documents.